UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br><br>DAVID M. HEMSTREET and<br>JULIE E. HEMSTREET,<br><br>           Debtors. | Chapter 7<br>Case No. 24-10820 |
| SEACOAST POWERSPORTS, INC.,<br>ROCHESTER MOTORSPORTS, INC., and<br>NM COOK REINSURANCE CO., INC.,<br><br>           Plaintiffs,<br><br>v.<br><br>DAVID M. HEMSTREET,<br><br>           Defendant. | Adv. Proc. No. 25-_____ |

**ADVERSARY COMPLAINT OBJECTING TO DISCHARGE
AND FOR DECLARATORY JUDGMENT REGARDING
<u>NON-DISCHARGEABILITY OF CERTAIN DEBTS</u>**

Seacoast Powersports, Inc., Rochester Motorsports, Inc., and NM Cook Reinsurance Co., Inc. (collectively, "<u>Plaintiffs</u>"), creditors in the above-captioned Chapter 7 case, by and through undersigned counsel, file this Adversary Complaint against the above-captioned co-debtor and defendant, David M. Hemstreet ("<u>Defendant</u>"), objecting to the discharge of Defendant as to certain debts owed by Defendant to Plaintiffs and for declaratory judgment of non-dischargeability regarding such debts pursuant to § 523(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and allege as follows:

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and 1334(b), and D.N.H. Local R. 77.4(a), pursuant to which all cases filed in New Hampshire under the Bankruptcy Code, and civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code, are referred to the bankruptcy judges of this district.

2. Venue is proper pursuant to 28 U.S.C. § 1409(a).

3. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) because it concerns a determination of the dischargeability of particular debts.

4. The statutory predicates for relief include §§ 523(a)(2), (4), and (6) of the Bankruptcy Code.

## PARTIES

5. Plaintiff Seacoast Powersports, Inc. ("Seacoast Powersports") is a domestic for profit corporation with a principal office address of 19 Lafayette Road in Hampton Falls, New Hampshire 03844.

6. Plaintiff Rochester Motorsports, Inc. ("Rochester Motorsports") is a domestic for profit corporation with a principal office address of 23 Farmington Road in Rochester, New Hampshire 03867.

7. Plaintiff NM Cook Reinsurance Co., Inc. ("NM Cook") is a foreign for-profit corporation with a mailing address of 23 Farmington Road in Rochester, New Hampshire 03867.

8. Defendant is an individual who, upon information and belief, resides at 24 Beech Circle in Center Ossipee, New Hampshire 03814.

9. Defendant is a co-debtor in Chapter 7 Case No. 24-10820.

## FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

**A.**     **The Bankruptcy Case.**

10.     Defendant filed a joint voluntary petition under Chapter 13 of the Bankruptcy Code in this Court on December 7, 2024 [Dkt. No. 1] with Julie E. Hemstreet (with Defendant, the "Debtors").

11.     On January 8, 2025, the Debtors moved to convert their case to one under Chapter 7 of the Bankruptcy Code [Dkt. No. 17] (the "Motion to Convert").  In the Motion to Convert, the Debtors stated that they sought bankruptcy relief to stay the State Court Action (defined below). See Motion to Convert ¶ 2.

12.     This Court granted the Motion to Convert on January 10, 2025 [Dkt. No. 19].

13.     Subsequently, this Court issued the Amended Notice of Chapter 7 Bankruptcy Case [Dtk. No. 20] stating that the deadline to object to the dischargeability of a debt is April 7, 2025.

**B.**     **Events Leading Up to the State Court Action.**

*i.*     ***Rochester Motorsports and Seacoast Powersports***

14.     Miles Cook ("Mr. Cook") is the President of Rochester Motorsports and Seacoast Powersports.

15.     In May of 1999, Mr. Cook opened Rochester Motorsports, which has continued to operate and serve customers from all over New Hampshire for more than two (2) decades.

16.     Since its inception, Rochester Motorsports has been successful.

17.     Rochester Motorsports is an authorized dealer of the following powersport models: Honda, Polaris, Yamaha, Suzuki, Kawasaki, Slingshot, and Kymco.

18. In January of 2016, Mr. Cook opened a sister store known as Seacoast Powersports in Hampton, New Hampshire. In December of 2021, Seacoast Powersports relocated to its current location in Hampton Falls, New Hampshire.

19. Over the past several years, Seacoast Powersports has become a successful dealership.

20. Seacoast Powersports is also an authorized dealer of the following powersport brands: Polaris, Yamaha, Suzuki, Kawasaki, CF Moto, and Kymco.

### ii. *The Unauthorized Dealer Agreement*

21. On June 1, 2021, Defendant became the Finance and Insurance ("F&I") Manager of Rochester Motorsports.

22. Shortly thereafter, Defendant approached Mr. Cook and recommended that Rochester Motorsports sell Finance and Insurance Products ("F&I Products") issued by iA American Warranty Group, Inc. and/or iA American Warranty Corp. (collectively, "AWG"). AWG F&I Products include extended warranties and other vehicle service contracts, as well as ancillary products such as GAP insurance.

23. Further, Defendant told Mr. Cook that AWG had a local insurance agent, Ronald R. Boudreau, Jr. d/b/a/ Granite State Dealer Services ("Mr. Boudreau") and/or GSDS, LLC ("GSDS"), who offered to help train the F&I salespeople at Rochester Motorsports.

24. At all times, Mr. Boudreau represented that he was an insurance agent affiliated with AWG and that he owned an insurance agency affiliated with AWG known as GSDS. Indeed, Mr. Boudreau's business card, which he provided to Mr. Cook, stated that he represented AWG and included the AWG logo.

25. Mr. Cook agreed that Rochester Motorsports should consider selling AWG F&I Products. However, Mr. Cook did not authorize Defendant to enter into any agreements with AWG on behalf of Rochester Motorsports; Defendant was only authorized to execute standard purchase and sale agreements with retail customers.

26. Despite the foregoing, Defendant, without any authority from Mr. Cook, Rochester Motorsports and/or Seacoast Powersports, entered into a dealer agreement dated August 3, 2021 (the "Dealer Agreement"), on behalf of both Rochester Motorsports and Seacoast Powersports, on the one hand, and Southwest Reinsure, Inc., on the other hand.[1]

27. Notably, Defendant was an employee of Rochester Motorsports at the time he entered into the Dealer Agreement.

28. However, Defendant also entered into the Dealer Agreement on behalf of Seacoast Powersports — a separate entity.

29. Defendant was not, and never has been, an employee of Seacoast Powersports.

30. Upon information and belief, AWG's policies require that a principal for a dealer (a "Dealer Principal") execute the Dealer Agreement.

31. However, Mr. Boudreau and/or GSDS, as agents of AWG, accepted the Dealer Agreement without confirming that the Dealer Principal of Rochester Motorsports and/or Seacoast Powersports executed the Dealer Agreement.

32. Similarly, AWG accepted the Dealer Agreement without confirming that the Dealer Principal of Rochester Motorsports and/or Seacoast Powersports executed the Dealer Agreement.

    *iii.*    ***The Unauthorized SPIF Program***

---

[1] Upon information and belief, AWG acquired Southwest Reinsure, Inc. in 2021.

5

33. Pursuant to the Dealer Agreement, AWG agreed to provide payment to Rochester Motorsports and/or Seacoast Powersports for the sale of AWG F&I Products.

34. However, upon information and belief, AWG allowed dealerships to opt-in to a sales performance initiative fund program ("SPIF Program"), in which a dealership could redirect a portion of the funds that AWG owed to the dealership, in connection with the sale of AWG F&I Products, to specific salespeople as commissions.

35. In connection with his unauthorized execution of the Dealer Agreement, Defendant also created a SPIF Program at Rochester Motorsports and Seacoast Powersports.

36. Initially, Defendant named himself as the sole salesperson at Rochester Motorsports and/or Seacoast Powersports to receive commissions under the SPIF Program and directed AWG to send commission payments directly to Defendant's personal bank account.

37. Notably, Mr. Cook, Rochester Motorsports and/or Seacoast Powersports did not authorize Defendant to create a SPIF Program, nor did they authorize payments under the SPIF Program to be paid to the Defendant. Further, receiving any payments under a SPIF Program was not included in the Defendant's compensation plan.

38. Equally concerning, Defendant created an unauthorized SPIF Program at Seacoast Powersports, even though he was not an employee of Seacoast Powersports.

39. Upon information and belief, AWG's policies require that only the Dealer Principal can create a SPIF Program.

40. However, Mr. Boudreau and/or GSDS, as agents of AWG, allowed Defendant to create a SPIF Program without confirming that Defendant was the Dealer Principal of Rochester Motorsports and/or Seacoast Powersports.

41. Similarly, AWG allowed Defendant to create a SPIF Program without confirming that he was the Dealer Principal of Rochester Motorsports and/or Seacoast Powersports.

42. Rochester Motorsports sold its first AWG F&I Product on August 21, 2021.

43. Seacoast Powersports sold its first AWG F&I Product on February 11, 2022.

44. As a result of the conduct of Defendant, Mr. Boudreau, GSDS, and/or AWG, Defendant received commissions on the sale of AWG F&I Products in an amount not less than $70,000.

45. Despite never being an employee of Seacoast Powersports, Defendant received commissions from the sale of AWG F&I Products at Seacoast Powersports from February 2022 until January 2023.

46. In Fall 2022, Mr. Cook decided to establish a reinsurance company, NM Cook, in connection with the sale of AWG F&I Products.

47. On or around December 22, 2022, Mr. Cook received the first cession statement (the "Cession Statement") for NM Cook, which set out the premiums and expenses incurred under the reinsured policies.

48. Upon receiving the Cession Statement, Mr. Cook discovered that approximately $167,000 had been removed from the reinsurance program as "administrative fees."

49. Upon further examination, Mr. Cook learned that Defendant and/or Mr. Boudreau (individually and/or as an agent of GSDS and/or AWG) had established an unauthorized SPIF Program that benefitted Defendant and/or Mr. Boudreau.

50. Upon further inquiry, Mr. Boudreau (individually and/or as an agent of GSDS and/or AWG) refused to disclose to Mr. Cook that a SPIF Program had been created.

51. Similarly, AWG refused to disclose to Mr. Cook the amount of the proceeds that Defendant, Mr. Boudreau and/or GSDS received in connection with the unauthorized SPIF Program.

52. Notably, AWG never had authorization from Mr. Cook to execute a SPIF Program.

53. Upon information and belief, Mr. Boudreau and/or GSDS were not licensed to engage in the sale, solicitation and/or negotiation of insurance products in the State of New Hampshire.

### iv.  *Defendant's Additional Unlawful Conduct*

54. On or around November 21, 2021, Defendant became the Sales Manager of Rochester Motorsports.

55. On or around December 31, 2021, Defendant purchased a Honda ADV150A (the "Honda Scooter") from Rochester Motorsports for $4,525.00.

56. On or around February 4, 2023, Defendant, without authorization and while serving as the Sales Manager, purchased three (3) additional powersport products from Rochester Motorsports at wholesale prices for "East Coast Powersports."

57. Upon information and belief, Defendant is the owner and operator of the entity known as "East Coast Powersports."

58. In connection with that transaction, Defendant, without authorization, also traded the Honda Scooter into Rochester Motorsports for $4,975.00, which was higher than the fair market value of the Honda Scooter.

59. In other words, Mr. Hemstreet purchased three (3) powersport products at wholesale prices and then applied an additional discount in the form of a trade-in — none of which he was authorized to do.

C.     **The State Court Action.**

60.    On or around May 18, 2023, Plaintiffs commenced an action (the "State Court Action") against Defendant, Mr. Boudreau, GSDS, and AWG in the State of New Hampshire, Rockingham Superior Court (the "Superior Court"), by filing a complaint that was later amended with the Superior Court's approval on March 11, 2024 (the "Amended State Court Complaint"). In the Amended State Court Complaint, Plaintiffs alleged conversion, civil conspiracy, and unjust enrichment.

61.    The State Court Action progressed to discovery, during which Defendant failed to respond to interrogatories and requests for document production. Consequently, on November 11, 2024, Plaintiffs sought conditional default against Defendant (the "Motion for Conditional Default").

62.    On November 12, 2024, the Superior Court entered conditional default against Defendant.

63.    On December 1, 2024, Defendant filed an objection to the Motion for Conditional Default.

64.    Upon information and belief, Defendant is indebted to Plaintiffs in the aggregate amount of not less than $70,000.00.

**COUNT I**
**(11 U.S.C. § 523(a)(2))**

65.    Plaintiffs repeat and incorporate the foregoing paragraphs as if fully set forth herein.

66.    Section 523(a)(2) of the Bankruptcy Code provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud[.]"

9

67. Defendant knowingly made false representations when entering into the Dealer Agreement and creating the SPIF Program without authorization from Mr. Cook, Rochester Motorsports and/or Seacoast Powersports.

68. Since at least August 21, 2021, for Rochester Motorsports, and February 11, 2022, for Seacoast Powersports, Defendant knowingly made false representations when selling AWG F&I Products without authorization or authority to do so.

69. Defendant's misrepresentations were made with the intent to deceive Plaintiffs about the sale of AWG F&I Products and any possible commissions.

70. Plaintiffs reasonably relied on Defendant's misrepresentations regarding the sale of AWG F&I Products, including based on the role of Defendant within Plaintiffs' businesses.

71. Plaintiffs have suffered damages as a result of Defendant's scheme.

72. Defendant's conduct violates section 523(a)(2) of the Bankruptcy Code.

73. Accordingly, Plaintiffs are entitled to declaratory judgment that Plaintiffs' claims against Defendant constitute non-dischargeable debts under § 523(a)(2) of the Bankruptcy Code.

## COUNT II
### (11 U.S.C. § 523(a)(4))

74. Plaintiffs repeat and incorporate the foregoing paragraphs as if fully set forth herein.

75. Section 523(a)(4) of the Bankruptcy Code provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]"

76. Defendant wrongfully obtained possession of Plaintiffs' property, in the form of money, by entering into the Dealer Agreement and creating a SPIF Program at Rochester Motorsports and Seacoast Powersports.

77. Defendant appropriated Plaintiffs' property for his own personal use because payments under the SPIF Program, which should have been paid to Rochester Motorsports and/or Seacoast Powersports, were paid to Defendant without authorization.

78. Defendant acted with fraudulent intent or deceit by entering into the Dealer Agreement and creating SPIF Programs without authorization and by concealing such actions from Mr. Cook, Rochester Motorsports and/or Seacoast Powersports.

79. Further, Defendant wrongfully obtained possession of Rochester Motorsports's property by trading in his Honda Scooter for higher than its fair market value and by purchasing three powersport products at wholesale prices for "East Coast Powersports."

80. Defendant appropriated Rochester Motorsports's property for his own personal use by retaining funds in excess of the Honda Scooter's fair market value and because Defendant is the owner and operator of "East Coast Powersports."

81. Defendant acted with fraudulent intent or deceit by turning in the Honda Scooter at an inappropriate price and for purchasing three powersport products at wholesale prices without authorization.

82. Defendant engaged in fraud or defalcation while committing larceny, and but for the larceny, Plaintiffs would not have incurred the losses attributable to Defendant.

83. Defendant's conduct violates section 523(a)(4) of the Bankruptcy Code.

84. Accordingly, Plaintiffs are entitled to declaratory judgment that Plaintiffs' claims against Defendant constitute non-dischargeable debts under § 523(a)(4) of the Bankruptcy Code.

## COUNT III
### (11 U.S.C. § 523(a)(6))

85. Plaintiffs repeat and incorporate the foregoing paragraphs as if fully set forth herein.

86. Section 523(a)(6) of the Bankruptcy Code provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"

87. Defendant's conduct caused willful and malicious injury to Plaintiffs.

88. Defendant's conduct violates section 523(a)(6) of the Bankruptcy Code.

89. Accordingly, Plaintiffs are entitled to declaratory judgment that Plaintiffs' claims against Defendant constitute non-dischargeable debts under § 523(a)(6) of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an order granting the following relief:

(A)  As to Count I, declaratory judgment that Plaintiffs' claims against Defendant constitute non-dischargeable debts under § 523(a)(2) of the Bankruptcy Code;

(B) As to Count II, declaratory judgment that Plaintiffs' claims against Defendant constitute non-dischargeable debts under § 523(a)(4) of the Bankruptcy Code;

(C) As to Count III, declaratory judgment that Plaintiffs' claims against Defendant constitute non-dischargeable debts under § 523(a)(6) of the Bankruptcy Code; and

(D) Such other and further relief as this Court deems just and proper.


Dated:  March 26, 2025                 **SEACOAST POWERSPORTS, INC., ROCHESTER MOTORSPORTS, and NM COOK REINSURANCE CO., INC.**

By their attorneys:

*/s/ Roy W. Tilsley, Jr.*
Roy W. Tilsley, Jr., Esq.
Bernstein, Shur, Sawyer & Nelson, P.A.
670 N. Commercial Street, Suite 108

P.O. Box 1120
Manchester, NH 03105
(603) 623-8700
rtilsley@bernsteinshur.com

Adam R. Prescott, Esq. (pro hac vice forthcoming)
Bernstein, Shur, Sawyer & Nelson, P.A.
100 Middle Street, P.O. Box 9729
Portland, ME 04104-5029
(207) 774-1200 (telephone)
(207) 774-1127 (facsimile)
Email: aprescott@bernsteinshur.com